IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

THOMAS STUMPF, *et al.*,                  §
                                          §
         Plaintiffs,                      §
                                          §
v.                                        §          Civil Action No. 3:15-CV-01944-N
                                          §
CITY OF DALLAS, *et al.*,                 §
                                          §
         Defendants.                      §

**ORDER**

This Order addresses Defendants City of Dallas (the "City") and Paul Pepe, M.D.'s

motion to dismiss [18], Defendant Johnny Lynn Rudder's motion to dismiss [42], and

Defendant Mario Lopez's motion for partial summary judgment [44]. The Court denies

Rudder's motion, grants Lopez's motion, and grants the City's motion in part and denies it

in part.

## I. ORIGINS OF THE DISPUTE

This case arises from Rudder and Lopez's response to a 9-1-1 call from Plaintiff Carol

Stumpf ("Carol") seeking emergency medical treatment of her 72-year-old husband, Plaintiff

Thomas Stumpf ("Stumpf") (collectively, the "Stumpfs"), for an epileptic seizure.[1]

According to the Stumpfs, when Rudder and Lopez, paramedics employed by the City,

arrived at their home, Carol immediately informed them of her husband's condition and

---

[1]The Court's factual recitation is taken from the allegations of the Original
Complaint [1].

brought them to Stumpf. *See* Orig. Compl. ¶ 14. At the time, Stumpf "was still suffering from a seizure; he was unresponsive, and his speech was garbled and nonsensical, but he was quietly lying on his bed and not at all combative." *Id.* ¶ 15. One of the paramedics "informed [Carol] that [Stumpf] needed to be transported to the hospital." *Id.* ¶ 16. The paramedics placed Stumpf on a gurney and transferred him to an ambulance. *Id.* Rudder entered the back of the vehicle with Stumpf, while Lopez took the wheel. *Id.* The paramedics then transported Stumpf to Baylor Regional Medical Center. *Id.* ¶ 17.

The Stumpfs allege that, upon arrival at the hospital, Rudder assaulted Stumpf. The Stumpfs' precise allegations are as follows:

> [W]hile [Stumpf] was still under the latter stages of his seizure and strapped to a gurney, [Rudder] began yelling at [Stumpf] in an angry tone and restraining him from moving or getting up off the gurney. He also began shouting profanities at [Stumpf]. Thereafter, [Rudder] pulled his arm back and began striking and punching [Stumpf] repeatedly about the face, head and neck, while he lay strapped to the gurney.

*Id.* ¶ 19. A number of nurses at the hospital told Rudder to stop attacking Stumpf. *Id.* Rudder then "further physically restrained [Stumpf] around the shoulder and neck and pulled him forcefully down onto the stretcher." *Id.* The assault caused Stumpf to suffer several fractures to his skull, orbital bones, and jaw. *Id.* Stumpf's injuries required multiple facial surgeries, including the implantation of a titanium plate and fourteen screws. *Id.* ¶ 23.

Following the incident, onlookers made several complaints to the Plano Police Department and the Dallas Fire-Rescue Department. A nurse at the scene reported Rudder's behavior to the Plano Police Department. *Id.* ¶ 32. The paramedics left the hospital before police could arrive, but three nurses gave statements to the police regarding the event. *Id.*

ORDER – PAGE 2

Rudder later denied striking Stumpf, while Lopez claimed his back was turned the entire time. *Id.* ¶ 33. Both paramedics omitted any mention of the struggle in their Dallas Fire-Rescue Patient Care forms. *Id.* After the Stumpfs filed complaints with the Dallas Fire-Rescue Department, the Department apologized for Rudder's behavior but ultimately allowed him to retain his position. *Id.* ¶ 34.

The Stumpfs contend that Rudder and Lopez's actions reflect a broader lack of training among City paramedics on the appropriate care and treatment of patients with epilepsy. City records reveal that the City of Dallas Emergency Medical Services Bureau of the Dallas Fire-Rescue Department ("EMS Department") responded to at least 13,443 seizure calls in 2012 and 2013. *Id.* ¶ 18. Post-seizure, "a person may exhibit fright or distress when confronted, appearing hostile, having difficulty communicating, and may not obey directions. Applying restraint at such a time may trigger or exacerbate resistance and combativeness, thus worsening the situation." *Id.* The Stumpfs maintain that there was an obvious need for training in this area, considering the high number of seizure calls and the City's provision of mechanical restraints and gurneys to its paramedics. *Id.* ¶¶ 55, 66. The Stumpfs also allege that Pepe, the governmental official "responsible for establishing, maintaining and/or monitoring the policies and practices of the EMS Department," *id.* ¶ 61, was aware of these risks and had knowledge of prior incidents in which City paramedics acted with callous disregard to the rights of similar patients. *Id.* ¶¶ 62, 69.

The Stumpfs assert that, instead of training paramedics on the proper treatment of seizure patients, the City adopted customs and practices that were sure to result in the

violation of patients' constitutional rights. First, Pepe failed "to adopt and follow medical protocols for the use of restraints on epilepsy patients and those experiencing seizures." *Id.* ¶ 62. Instead, the City has a custom of encouraging the use of gurneys and straps when restraining and transporting patients. *Id.* ¶¶ 47, 62. Pepe also failed to train paramedics to intervene in situations where a fellow paramedic uses excessive force against a patient. *Id.* ¶ 56. Finally, the Stumpfs contend that Pepe and the City failed to discipline employees properly for their use of excessive force against patients. *Id.* ¶ 57.

The Stumpfs filed this action against the City of Dallas, Pepe in his official capacity as the Medical Director for the EMS Department, Rudder in his individual capacity, and Lopez in his individual capacity. Stumpf asserts claims under 42 U.S.C. § 1983 against all Defendants for violations of his constitutional rights under the Fourth and Fourteenth Amendments. In addition, Stumpf contends that the City and Pepe's actions violated Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 (the "ADA"). The Stumpfs also bring a variety of state tort law claims against each of the Defendants.[2]

Rudder, Lopez, and the City have each filed motions regarding the federal claims against them. First, Rudder moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss the section 1983 against him. Lopez moves separately under Rule 56 for summary judgment on the section 1983 claim against him. And, lastly, the City moves to dismiss the section 1983 and ADA claims against it. The Court addresses each of these motions in turn.

---

[2]The Court previously granted the City's motion to dismiss the state law claims against Pepe, Rudder, and Lopez [8], and Pepe's motion to dismiss the federal claims against him [9]. *See* Order 1–2, September 2, 2015 [32].

## II. The Relevant Legal Standards

### A. The Rule 12(b)(6) Standard

When considering a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

In ruling on a Rule 12(b)(6) motion, a court generally limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, a court may also consider documents outside of the pleadings if they fall within

certain limited categories. First, "[a] court is permitted . . . to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Second, "[a] written document that is attached to a complaint as an exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal proceeding." *Ferrer*, 484 F.3d at 780. Third, a "court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)). Finally, "[i]n deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) (citation omitted); *see also, e.g.*, *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (stating, in upholding district court's dismissal pursuant to Rule 12(b)(6), that "[t]he district court took appropriate judicial notice of publically available documents and transcripts produced by the [Food and Drug Administration], which were matters of public record directly relevant to the issue at hand").

### B. The Summary Judgment Standard

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the

light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25. Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Indeed, factual controversies are resolved in favor of the nonmoving party "'only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.'" *Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### *C. The Qualified Immunity Standard*

In addition to the Rule 12(b)(6) standard of dismissal and the Rule 56 standard for summary judgment, the Court must also consider the standard for asserting qualified immunity. "Qualified immunity is a defense available to public officials performing discretionary functions ' . . . insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known.'" *Noyola v. Texas Dep't of Human Resources*, 846 F.2d 1021, 1024 (5th Cir. 1988) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This doctrine balances two interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Because "qualified immunity is designed to shield from civil liability 'all but the plainly incompetent or those who knowingly violate the law,'" denial of qualified immunity is appropriate only in rare circumstances. *Brady v. Ford Bend Cty.*, 58 F.3d 173, 173–74 (5th Cir. 1995) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

To resolve a public official's qualified immunity claim, a court must consider two factors. First, has the plaintiff shown a violation of a constitutional right? *Saucier v. Katz*, 533 U.S. 194, 201 (2001). And, second, was the right "clearly established" at the time of the public official's alleged misconduct? *Id.* The second inquiry is critical: unless the official violated a clearly established constitutional right, qualified immunity applies. *Pearson*, 555 U.S. at 231. "The judges of the district courts . . . [may] exercise their sound discretion in

deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 235. "But under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).

### III. THE COURT DENIES RUDDER'S MOTION TO DISMISS

Rudder moves to dismiss Stumpf's section 1983 claim on the basis of qualified immunity. The Court finds that Stumpf has not plausibly alleged a violation of his Fourth Amendment rights, but that Stumpf has adequately plead a violation of his clearly established Fourteenth Amendment rights. Accordingly, the Court holds that Rudder is not entitled to qualified immunity from the section 1983 claim and denies Rudder's motion to dismiss.

### A. Rudder Did Not Violate the Fourth Amendment

The Court first considers whether Rudder's actions violated Stumpf's Fourth Amendment right to be free from unreasonable seizures and the use of excessive force. Stumpf alleges that Rudder violated his Fourth Amendment rights on two occasions: first, when Rudder removed Stumpf from his home without his consent, and second, when Rudder restrained Stumpf from getting up off the gurney at Baylor Regional Medical Center. The allegations of the Original Complaint do not show that Rudder seized Stumpf within the meaning of the Fourth Amendment in either situation, and therefore did not violate Stumpf's Fourth Amendment rights.

To establish a Fourth Amendment excessive force claim, Stumpf must show that he was seized, and that he "suffered (1) an injury that (2) resulted directly and only from the use

of force that was excessive to the need and that (3) the force used was objectively unreasonable." *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004). A government official seizes a person when the official, "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). Stumpf argues that the seizure in his home took place by a show of authority, while the seizure at the hospital was achieved by means of physical force.

The Sixth Circuit's ruling in *Peete v. Metro. Gov't of Nashville and Davidson Cty.*, 486 F.3d 217 (6th Cir. 2007), is instructive. In *Peete*, paramedics responding to a 9-1-1 call restrained a patient suffering from an epileptic seizure. *Id.* at 219–20. The patient died because the paramedics failed to ensure that he had a clear passage to breathe. *Id.* at 220. The court held that the paramedics were entitled to qualified immunity because the plaintiff "was neither communicative, nor conscious and the paramedics were attempting to render aid." *Id.* at 222. As a result, "[t]he plaintiff's excessive force claim [looked] like a medical malpractice claim rather than a Fourth Amendment or Due Process violation." *Id.* The court concluded that "improper medical treatment by a government employee, standing alone, does not violate the Fourth or Fourteenth Amendment." *Id.*

The Fifth Circuit endorsed *Peete*'s reasoning in *Pena v. Givens*, ___ Fed. Appx. ___, 2015 WL 7434253 (5th Cir. 2015). In *Pena*, the police apprehended the plaintiff and brought him to a psychiatric emergency room. *Id.* at *1. Although the plaintiff had a heart condition and exhibited abnormal vital signs, the hospital staff provided no cardiac treatment. *Id.* Instead, employees forcibly restrained the plaintiff to prevent him from leaving the

emergency room, injected him with a mixture of antipsyhotic and sedative medications, and confined him to a seclusion room. *Id.* at *1–2. The plaintiff died from undetermined causes. *Id.* at *2. The Fifth Circuit found that there was "no controlling authority . . . suggesting that medical personnel 'seize' patients when restraining them in the course of providing treatment." *Id.* at *6 (internal quotation marks and citations omitted). As a result, the Court held that staff were qualifiedly immune from the plaintiff's excessive force claims.

In this case, Carol called 9-1-1 and requested emergency medical treatment for Stumpf. When Rudder and Lopez advised Carol that Stumpf needed to be taken to the hospital for further treatment, neither Carol nor Stumpf objected. At the time, Stumpf was still suffering from a seizure, his speech was garbled and nonsensical, and he was incapable of communicating his consent. Altogether, these facts show that Stumpf never submitted to a show of authority intended to enforce, deter, or incarcerate, and therefore was not seized within the meaning of the Fourth Amendment.

As for Rudder and Lopez's restraint of Stumpf at the hospital, the facts once again establish that Stumpf was never seized. The allegations of the Original Complaint show that Stumpf was still suffering from an epileptic seizure at the time of Rudder's alleged assault. The Original Complaint contains no allegations suggesting that Rudder and Lopez were acting in a law enforcement capacity at the hospital. Rather, the paramedics were acting in an emergency medical response capacity, and thus, their restraint of Stumpf did not constitute a Fourth Amendment seizure.

Neither the paramedics' removal of Stumpf from his home nor their restraint of Stumpf at Baylor Regional Medical Center constituted a seizure within the meaning of the Fourth Amendment. Because Rudder did not violate Stumpf's Fourth Amendment rights, Rudder is qualifiedly immune from any section 1983 claim premised on that provision.

### B. Rudder Violated Clearly Established Fourteenth Amendment Law

The Court next considers whether Rudder violated Stumpf's Fourteenth Amendment rights, and if so, whether those rights were clearly established. Stumpf argues that Rudder's alleged assault at Baylor Regional Medical Center violated his substantive due process rights. Because Rudder's conduct was conscience-shocking under clearly established law, he is not entitled to qualified immunity from Stumpf's section 1983 claim premised on the Fourteenth Amendment.

"[T]he right to be free of state-occasioned damage to a person's bodily integrity is protected by the fourteenth amendment guarantee of due process." *Pena*, 2015 WL 7434253 at *6 (internal quotation marks and citations omitted). The threshold question in a due process challenge to executive action is whether the officer's behavior "shock[s] the contemporary conscience." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998). To shock the conscience, an official's actions must be "'grossly disproportionate to the need for action under the circumstances and . . . inspired by malice rather than merely careless or unwise excess of zeal.'" *Pena*, 2015 WL 7434253 at *6 (quoting *Petta v. Rivera*, 143 F.3d 895, 899 (5th Cir. 1998)). "Conduct intended to injure in some way unjustifiable by any

government interest is the sort of official action most likely to rise to the conscience-shocking level." *Lewis*, 523 U.S. at 849.

Stumpf has pled a plausible violation of his substantive due process rights. Stumpf alleges that he, a 72-year old man with a long history of epilepsy, was strapped to a gurney when Rudder deliberately drew back his fist and beat Stumpf about the face, head, and neck. The extent of Stumpf's injuries and the reaction of nearby witnesses testify to the intensity of this assault. Unlike *Petta* and *Pena*, where the governmental officers applied pressure, restrictive holds, and physical restraints in an attempt to subdue their patients, Rudder's actions here were intentionally injurious. That Rudder's blows were delivered in the hospital setting makes his behavior even more egregious. Altogether, these facts give rise to an inference of malice, and hence state a plausible claim for a violation of Stumpf's rights under the Fourteenth Amendment.

The allegations of the Original Complaint, taken as true, suggest that Rudder violated Stumpf's substantive due process rights under the Fourteenth Amendment. The crucial question, however, is whether these rights were clearly established at the time of the incident. *See Saucier*, 533 U.S. at 201. The Court determines that they were.

In order for a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). To deny qualified immunity, "existing precedent [must place] the statutory or constitutional question beyond debate." *City and Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (internal

quotation marks and citation omitted). "This exacting standard gives government officials breathing room to make reasonable but mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotation marks and citation omitted). However, "'clearly established' does not necessarily refer to commanding precedent that is factually on all-fours with the case at bar or that holds that the very action in question is unlawful." *Morris v. Dearborne*, 181 F.3d 657, 665 (5th Cir. 1999). "The constitutional right is clearly established if the unlawfulness of the conduct would be apparent to a reasonably competent official." *Id.* at 666.

Rudder argues that the most relevant authorities available at the time of the incident – *Peete*, 486 F.3d 217, and *Davidson v. City of Jacksonville, Fla.*, 359 F. Supp. 2d 1291 (M.D. Fla. 2005) – placed his conduct within the realm of constitutional behavior. The Court disagrees. In both cases, the courts held the defendants were entitled to qualified immunity because the defendants were acting in an emergency-medical-treatment context. *See Peete*, 486 F.3d at 222 ("[I]mproper medical treatment by a government employee, standing alone, does not violate the Fourth or Fourteenth Amendment."); *Davidson*, 359 F. Supp. 2d at 1296 (granting qualified immunity where paramedics hogtied patient for medical reasons). But neither of these cases involved a deliberate attempt to harm a patient. Because a reasonably competent official would have concluded that Rudder's assault shocked the contemporary conscience, the Court holds that Rudder is not entitled to qualified immunity.

Because Rudder is not entitled to qualified immunity from the section 1983 claim, the Court denies Rudder's motion to dismiss.

## IV. THE COURT GRANTS LOPEZ'S MOTION FOR SUMMARY JUDGMENT

Lopez moves for summary judgment on the grounds that he is entitled to qualified immunity from Stumpf's section 1983 claim. Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Because there is no evidence that Lopez violated any clearly established constitutional law, the Court grants Lopez's motion.

Stumpf has failed to show that Lopez violated any clearly established constitutional law. First, the pleadings establish that no seizure occurred under Fourth Amendment law. *See Pena*, 2015 WL 7434253 at *5–6 (finding no controlling authority for position that governmental officers seize patients when they provide emergency medical treatment). And second, the evidence does not show that Lopez's failure to intervene at the hospital violated any clearly established Fourteenth Amendment law. At most, Stumpf has shown that Lopez witnessed Rudder's attack and made a split-second decision to continue restraining Stumpf at the other end of the gurney. Considering Stumpf's medical condition at the time, his repeated attempts to rise from the gurney, and Lopez's own efforts to restrain Stumpf by holding down his lower body with firm but admittedly nonviolent force, the Court concludes that Lopez's conduct was not "'grossly disproportionate to the need for action under the circumstances.'" *Pena*, 2015 WL 7434253 at *6 (quoting *Petta*, 143 F.3d at 899).

Finding no constitutional violation under clearly established law, the Court holds that Lopez is entitled to qualified immunity and grants his motion for summary judgment.[3]

## V. THE COURT GRANTS THE CITY'S MOTION IN PART

The City moves to dismiss Stumpf's claims under section 1983 and the ADA. Stumpf alleges that the City is constitutionally liable under section 1983 for its policies regarding the treatment of seizure patients and for its failure to train, supervise, and discipline its employees. Stumpf also contends that the City discriminated against him in violation of the ADA. The Court finds that Stumpf has not pled a plausible section 1983 claim against the City, but that the allegations of the Original Complaint support Stumpf's claim under the ADA. Thus, the Court grants the City's motion to dismiss in part and denies it in part.

### A. *Stumpf Does Not State a Plausible Section 1983 Claim Against the City*

Stumpf contends that the City's policies regarding the treatment of seizure patients and inadequacies in the City's training, supervision, and discipline of paramedics resulted in Rudder's violation of his due process rights. Because Stumpf fails to plead sufficient facts to establish deliberate indifference, the Court holds that Stumpf has not stated a plausible section 1983 claim against the City.

#### 1. *The City Did Not Adopt an Official Policy with Deliberate Indifference to a Risk of Constitutional Harm.* – Stumpf alleges that numerous policies and practices caused Rudder's violation of Stumpf's due process rights. Stumpf maintains that the City

---

[3]Because Lopez is entitled to summary judgment on the issue of qualified immunity, the Court does not consider his alternative argument regarding the Stumpfs' failure to file a Rule 7(a) Reply.

encourages the use of restraints when treating and transporting patients, authorizes the use of force against seizure patients, and has an unspoken policy of "covering up" or failing to investigate citizen complaints against paramedics.  None of these alleged policies and practices can support a finding of *Monell* liability, however, because Stumpf has not shown that the City adopted any of them with deliberate indifference to the due process rights of its citizens.

"[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Social Servs. of New York*, 436 U.S. 658, 691 (1978).  Rather, to establish the City's liability, Stumpf must identify "1) a policymaker; 2) an official policy; 3) and a violation of constitutional rights whose 'moving force' is the policy or custom." *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003); *see also Monell*, 436 U.S. at 694.  *Monell* liability will attach only if the alleged policy is facially unconstitutional or if the municipality "promulgated [the policy] with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) (quoting *Bd. of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 407 (1997)).  In other words, to act with deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (internal citation and quotation marks omitted).

ORDER – PAGE 17

At best, Stumpf provides two allegations that might support a finding of deliberate indifference.  First, Stumpf states that the City's policymaker, Pepe, was aware that the use of "physical, mechanical, and human restraints" on seizure patients might cause "violations of constitutionally protected rights of Mr. Stump, and others."  Orig. Compl. ¶ 62.  Second, Stumpf states that Pepe had knowledge of "specific prior incidents" in which City paramedics had "acted in an unlawful manner with deliberate indifference to the civil rights of persons such as Plaintiff Thomas Stumpf."  *Id.* ¶ 69.  In some measure, these allegations suggest that Pepe was aware that the use of restraints might trigger a violent or combative reaction on the part of seizure patients.  However, Stumpf says nothing about the risk that a City paramedic like Rudder would respond by assaulting such a patient.  Because Rudder's assault, and not the restraint of Stumpf *per se*, violated Stumpf's due process rights, Stumpf's allegations provide no factual basis for a finding of deliberate indifference on the part of the City.

*2. The City Did Not Implement an Inadequate Training Policy with Deliberate Indifference to a Risk of Constitutional Harm*. **–** Stumpf alleges that the City inadequately trained its paramedics on the general treatment of epileptic patients, the use of restraints when transporting and treating such patients, and the need to intervene in confrontations between fellow paramedics and their patients.  Once again, Stumpf has not pled sufficient facts to support a finding of deliberate indifference, and therefore his failure to train claim is facially implausible.

The City may be held liable under section 1983 for a failure to train, supervise, or discipline its employees, but "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 131 S. Ct. 1350, 1359 (2011). To state a claim for failure to train or supervise, Stumpf must allege that: "(1) [the City's] training policy procedures were inadequate, (2) [the City] was deliberately indifferent in adopting its training policy, and (3) the inadequate training policy directly caused [Stumpf's injuries]." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010). Under the second element, a plaintiff must show that "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989).

Stumpf provides no facts that might show the use of excessive force against seizure patients has occurred on previous occasions, or that City policymakers were aware of such incidents. Moreover, beyond vague and conclusory allegations, Stumpf has not explained how the use of restraints on seizure patients was likely to result in the violation of their due process rights. Accordingly, Stumpf's allegations do not show that the City implemented its training policies with deliberate indifference to the due process rights of its citizens.

In conclusion, the allegations do not establish that the City was aware or should have been aware that its practices and training policies posed a risk of constitutional harm.

Because Stumpf has not stated a plausible claim for *Monell* liability, the Court dismisses his section 1983 claim against the City.

### B. Stumpf States a Plausible Claim for Violation of the ADA

Stumpf has stated a plausible claim for compensatory damages under the ADA. Title II of the ADA provides that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The City contends that Stumpf has not shown that Rudder and Lopez discriminated against him "by reason of" his disability. In particular, the City maintains that Stumpf must allege intentional discrimination in order to assert a private action for compensatory damages. *See Delano-Pyle v. Victoria Cty., Tex.*, 302 F.3d 567, 574 (5th Cir. 2002). In this case, the allegations show that Rudder and Lopez knew or should have known that Stumpf was suffering from an epileptic seizure, that he was incapable of following commands, and that his actions were involuntary. Nevertheless, when Stumpf attempted to rise from the gurney, Rudder resorted to profanity and violence to restrain his patient, and Lopez failed to intervene. The Court concludes that these allegations give rise to a reasonable inference that Rudder and Lopez discriminated against Stumpf "by reason of" his disability. *See id.* (finding sufficient evidence of discriminatory animus where officer grew frustrated with hearing-impaired plaintiff's failure to follow verbal instructions and administered sobriety test without auxiliary aid).

Accordingly, the Court denies the City's motion to dismiss the ADA claim.

## CONCLUSION

The Court denies Rudder's motion to dismiss on the basis of qualified immunity. The Court grants Lopez's motion for summary judgment on the basis of qualified immunity. The Court grants the City's motion to dismiss in part and denies it in part.

Signed February 26, 2016.

_____
David C. Godbey
United States District Judge